IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DR. MARY BEGOLE                                                                          PLAINTIFF

V.                                                         CIVIL ACTION NO.: 1:17-cv-33-SA-DAS

NORTH MISSISSIPPI MEDICAL CENTER, INC.,
NORTH MISSISSIPPI HEALTH SERVICES, INC.,
TUPELO EMERGENCY CARE ASSOCIATES, LLC,
and DR. JOSEPH JOHNSEY                                                                   DEFENDANTS

MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss and Compel Arbitration [14], wherein Defendants argue that Plaintiff is bound under certain Employment Agreements mandating arbitration.

*Facts and Procedural History*

Plaintiff, Dr. Begole, signed an Employment agreement to provide emergency physician services for North Mississippi Medical Center's (NMMC) Emergency Department on June 10, 2014. The Employment Agreement contained an arbitration clause with the following pertinent language:

> **Arbitration.** Employer and Employee agree that all disputes between them arising out of or relating to this Agreement are to be resolved by arbitration as provided in this section. This Agreement to arbitrate shall survive the termination of this Agreement.

NMMC later terminated all employment agreements with its Emergency Department physicians in 2015, deciding instead to operate under an independent contractor model. At this point, all emergency physicians were offered independent contractor agreements.

Plaintiff signed the Independent Contractor Agreement (IC Agreement) on February 12, 2015. The IC agreement contained the following language within its arbitration clause:

> **Arbitration.** Disputes arising under this Agreement which are not resolved by agreement of the Parties shall, upon written request of either Party, be submitted to arbitration pursuant to the rules of the American Health Lawyers Association.

Plaintiff brings claims in this Court under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended (Title VII), and state law claims. Defendant moved to compel arbitration pursuant to the Employment Agreement and the IC Agreement under the Federal Arbitration Act (FAA). Plaintiff disputes the validity of both agreements.

*Standard*

Under the FAA, courts conduct a two-prong arbitration inquiry, determining "first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Qualcomm Inc. v. Am. Wireless License Group*, 980 So. 2d 261, 268 (Miss. 2007) (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). "The first prong is two-fold in that the court considers whether there is a valid arbitration agreement and then whether the parties' dispute is within the scope of the arbitration agreement." *Greater Canton Ford Mercury, Inc. v. Ables*, 948 So. 2d 417, 421 (Miss. 2007) (citing *East Ford*, 826 So. 2d at 713). Under the second prong, "[t]he FAA mandates that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Ables*, 948 So. 2d at 423 (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1055 (Miss. 2004)[1].

---

[1] Under the FAA, "[s]tate law[ ]' . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 566 U.S. 624, 630–31, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009). Accordingly, the Court applies state law here.

There is no dispute that Plaintiff executed the arbitration agreement, thus the question before the Court is whether Plaintiff's claims are within the scope of an enforceable arbitration clause. "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). Though the FAA creates "substantive federal law regarding the enforceability of arbitration agreements," it does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Crawford*, 748 F.3d at 257.

*Analysis and Discussion*

Following the conversion of her employment contract into an independent contract and her eventual termination, Plaintiff brings the following claims: (1) gender discrimination under Title VII, (2) retaliation under Title VII, (3) age discrimination under the ADEA, (4) retaliation under the ADEA, (5) wrongful termination, (6) intentional interference with contract, (7) intentional interference with business relations, and (8) fraud. She posits different reasons why some of these claims should be excluded from arbitration, and the Court addresses each in turn.

Regarding Plaintiff's Title VII and ADEA claims, Plaintiff alleges that Defendant Johnsey engaged in multiple instances of harassment and gender and age discrimination, and that the behavior was tolerated by NMMC. However, Plaintiff fails to respond to Defendants' argument that such claims arise under the Plaintiff's employment contracts and are subject to arbitration. As statutory discrimination claims are generally subject to arbitration in the Fifth Circuit, and Plaintiff has provided no compelling reason or explanation why her Title VII and ADEA allegations are outside of her employment contracts, the Court will focus on Plaintiff's other claims. *See Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 674 (5th Cir. 2006) (citing

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S. Ct. 1647, 114 L. Ed. 2d. 26 (1991) (ADEA); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991) (Title VII).

### A. *Wrongful termination*

Plaintiff claims that NMMC converted her into an independent contractor and then terminated her in retaliation for engaging in protected activity. For example, she claims that she was terminated in retaliation for reporting violations of federal drug regulations to the Drug Enforcement Agency, and because she reported to senior management that Defendant Johnsey had violated Health Insurance Portability and Accountability Act (HIPAA). Plaintiff claims that the retaliatory termination results in tortious conduct prohibited under *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993). Without providing authority for the premise, Plaintiff states that "[b]ecause [her] fifth cause of action is a tort claim, by definition, it does not 'arise under' the Agreements and therefore is not subject to arbitration." Conversely, Defendants move the Court to consider not the legal cause of action asserted, but rather the factual allegations in the complaint when determining whether Plaintiff's claims "arise under" the Employment Agreement or IC Agreement.

In determining whether a party's dispute is within the scope of an arbitration agreement, courts examine whether the arbitration language is broad or narrow. If arbitration language is "broad," then arbitration is "not limited to claims that literally 'arise under the contract.'" *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). In that case, an arbitration clause "embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Ramco*, 139 F.3d at 1067); *Doe v. Hallmark Partners, LP*, 227 So. 3d 1052, 1056–57 (Miss. 2017), reh'g

4

denied (Aug. 10, 2017). On the other hand, narrow arbitration language requires arbitration of disputes that directly "arise out of" a contract. "If the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985) (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir.1983)).

In the instant case, there are two relevant provisions containing differing levels of restriction. In her Employee Agreement, Plaintiff agreed to arbitrate "all disputes between them arising out of or *relating to* this Agreement." Therefore, the initial language was broad. However, Plaintiff's Employment Agreement was terminated in 2015, when the IC agreement was initiated. The IC Agreement's language is not quite as broad. The IC Agreement's language applies to claims "arising out of this Agreement" without including the "related to" type language. *See Sealey v. Johanson*, 175 F. Supp. 3d 681, 685 (S.D. Miss. 2016). Plaintiff is correct in arguing that narrow provisions such as this generally do not cover all "collateral issues," *Niolet v. Rice*, 20 So. 3d 31, 33 (Miss. Ct. App. 2009).

However, Plaintiff's IC Agreement contained provisions governing the obligations to each party, including the obligation to "comply in all respects with Federal and State laws." Therefore, even in reading the arbitration clause narrowly, Plaintiff's claims arise from duties imposed by her IC Agreement. Therefore, Plaintiff's *McArn* claim is subject to arbitration.

### B. *Intentional Interference with Contract, Interference With Business Relations, Fraud*

In addition to those actions encompassed by Plaintiff's ADEA and Title VII claims, Plaintiff alleges that Defendant Johnsey interfered with her ability to perform her duties under her Employment Contract, that he interfered with her contract to provide emergency physician services by scheduling insufficient physician coverage (as defined in the Employment Contract),

and that he refused to provide complete copies of the IC Contract in a timely manner. Thus, Plaintiff argues that her claims for intentional interference with contract, intentional interference with business relations, and fraud are directed towards Defendant Johnsey, individually. As he was not a signatory to the Agreement, she argues such claims are not subject to arbitration. In opposition, Defendants argue that Plaintiff is equitably estopped from avoiding arbitration.

"When the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," a nonsignatory may compel a signatory to arbitrate. *B.C. Rogers Poultry v. Wedgeworth*, 911 So. 2d 483 (Miss. 2005). (quoting *Grigson v. Creative Artists Agency L.L.C*, 210 F.3d 524, 527). The Mississippi Supreme Court has further required that the interdependent-and-concerted misconduct occurred between a nonsignatory defendant and a signatory defendant with which a "close legal relationship" existed in order to compel arbitration. *See Wedgeworth*, 911 So. 2d at 492 ("A non-signatory should have standing to compel arbitration where the non-signatory has a close legal relationship, such as, alter ego, parent/subsidiary, or agency relationship, with a signatory to the agreement") (citing *Terminix*, 904 So. 2d 1051; *see also Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004) ("A nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency")).

Plaintiff's claims clearly allege interdependent and concerted misconduct against all Defendants. Additionally, Plaintiff has accused NMMC of authorizing only Defendant Johnsey to negotiate the proposed contracts, effectively admitting that Defendant Johnsey acted in an agency capacity. *McFarland v. Entergy Miss., Inc.*, 919 So. 2d 894, 902 (Miss. 2005) ("An express agent is one who is 'in fact authorized by the principal to act on their behalf.'") (citation

omitted); *Lemon Drop Properties, LLC v. Pass Marianne, LLC*, 73 So. 3d 1131, 1135 (Miss. 2011). Thus, Defendant Johnsey, as NMMC's agent, has the right to compel arbitration based on the agreement between Plaintiff and NMMC because he acted as NMMC's agent, and because Plaintiff's claims relate to Defendant Johnsey's behavior as an agent of NMMC. *Lemon Drop Properties*, 73 So. 3d at 1135 (collecting cases and citing *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App. 2011) ("[t]he scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable")). Therefore, Plaintiff's claims against Defendant Johnsey in his individual capacity should be arbitrated along with her other claims

### C. Defenses to the Contracts

"[I]n order to determine whether legal constraints exist which would preclude arbitration, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713–14 (Miss. 2002) (citing *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996)). The courts have recognized "two types of unconscionability, procedural and substantive." *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000) (quoting *York v. Georgia-Pac. Corp.*, 585 F. Supp. 1265, 1278 (N.D. Miss. 1984)). Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id.* On the other hand, substantive

7

unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *Id*.

Plaintiff argues that Defendants informed her that if she wished to continue working in the Emergency Department, she would have to sign the IC Agreement, rather than continue on as a standard employee, thus she argues that she was fraudulently induced to sign the IC Agreement. She was also financially desperate to obtain a contract in order to ensure an income stream, and NMMC forced her to negotiate with Defendant Johnsey in order to solidify this contract, resulting in what she claims was an unfair bargain.

Though Dr. Begole was told that she would convert to an independent contractor as of February 1, 2015, she did not receive the IC agreement until February 12, 2015. Between February 1 and February 12, Plaintiff received several partial agreements, and she grew worried about whether she and the other staff members had medical malpractice insurance coverage, considering the lack of contract. Dr. Begole also claims that due to Dr. Johnsey's erratic and hostile behavior, she and other doctors within the facility were under significant distress. She complains that she was working in the emergency department when she finally received the full contract, and could not review the document because of time constraints and general distress regarding the necessity of malpractice insurance. Thus, Plaintiff asserts procedural unconscionability.

Where a contract which contains an arbitration agreement is attacked as being procedurally unconscionable, the attack

> is an attack on the formation of the contract generally, not an attack on the arbitration clause itself. Because [the plaintiff's] claim relates to the entire agreement, rather than just the arbitration clause, the FAA requires that her claims be heard by an arbitrator.

*Rojas v. TK Communications, Inc.*, 87 F.3d 745, 751 n.3 (5th Cir. 1996); *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 725–26 (Miss. 2002). Furthermore, though Plaintiff complains that she had limited time to review the IC agreement, she does not accuse Defendants of rushing her or giving her unreasonable deadlines within which to sign. This Court will not invalidate an arbitration provision merely because an aggrieved party failed to thoroughly read and examine the contract. *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006). Additionally, to the extent that Plaintiff's fraud claims reach NMMC's inducement of the Employment Agreement, her claim is properly decided in arbitration. *Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 219 (5th Cir. 1997) (citing *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).

Finally, Plaintiff argues that her original Employment Agreement is substantively unconscionable because it required her to waive her right to punitive damages. Substantive unconscionability is proven by oppressive contract terms such that "there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach . . . ." *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699–700 (Miss. 2009); *see also Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F. Supp. 104, 109 S.D. Miss. (1979).

While in certain circumstances, limiting a Plaintiff's statutory damages may be deemed unconscionable, thus is not the case here. Courts that have held such clauses unconscionable are distinguishable. For example, in *Moulds*, the case upon which Plaintiff relies, the Court found that, in light of the "multitude" or "plethora" of provisions that had been found unconscionable, the contract was unconscionable as a whole. However, Plaintiff has been unable to show any

such other substantively unconscionable terms in the IC Agreement, the contract relevant to her claims. Furthermore, Plaintiff's Employment Agreement was nullified upon her agreement to become an independent contractor. Thus, the punitive damages waiver was no longer in effect when she was terminated. Accordingly, as Plaintiff's original Employment Agreement was terminated, it is no longer relevant to the Court's inquiry, and even if it were, it does not preclude arbitration.

*Conclusion*

Having considered and rejected Plaintiff's defenses to arbitration, the Court finds the parties have a valid agreement to arbitrate which covers the claims sought to be asserted by the Plaintiff. The Court further finds there are no external legal constraints that foreclose arbitration. Accordingly, Defendant's Motion to Compel Arbitration is GRANTED.

SO ORDERED this the 23rd day of March, 2018.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE